IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PRESTON R. SCOTT,
     Petitioner,

vs.                               Case No.:  3:11cv64/WS/EMT

KENNETH S. TUCKER,
     Respondent.
_____/

## ORDER AND REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 13).  Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (doc. 26).  Petitioner filed a response in opposition to the motion (doc. 29).  Petitioner also filed a "Motion for Reconsideration of Jurisdiction Notice and Additional Facts" (doc. 28), which the undersigned construes as a motion to consider the arguments included therein and the exhibits attached thereto, and will grant only to that extent.

This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is established by the state court record (doc. 26, Exhibits).[1]  By indictment, Petitioner was charged in the Circuit Court in and for Escambia County,

---

[1] Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (doc. 26).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, with committing premeditated first-degree murder of Tina Lafayette Scott with a weapon on or about December 26, 2004 (Ex. A).  Through counsel, Petitioner filed a pretrial motion to suppress statements he made during a police interview on December 27, 2004, which was recorded on an audio tape (Ex. B).  At the commencement of evidentiary proceedings on the motion to suppress, the parties discussed and agreed to redactions of certain portions of the interview (Ex. B at 2–7, Ex. C).  The trial court denied the motion to suppress (Ex. B).  At the commencement of Petitioner's jury trial on July 11, 2006, the trial judge inquired whether Petitioner had an opportunity to review the audio tape of the interview and the transcript of the interview (Ex. E at 9).  Petitioner expressed concern that the transcript reflected some statements that he could not hear on the audio tape (*id*. at 9–10).  In light of this concern, the State announced it would not utilize the transcript of the interview during trial and instead play the audio tape for the jury and let it speak for itself (*id*. at 10).  During trial, an audio recording of Petitioner's interview with police was admitted into evidence and published to the jury during the testimony of Deputy Mark Smeester of the Escambia County Sheriff's Office  (*id*. at 143–86).  The jury found Petitioner guilty of third-degree murder, a lesser included offense, with an interrogatory finding that Petitioner carried, displayed, used, threatened to use or attempted to use a weapon during its commission (Ex. F).  On August 24, 2006, Petitioner was adjudicated guilty and sentenced to thirty (30) years of imprisonment, with pre-sentence credit of 607 days (Ex. G).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D06-4962 (Ex. H).  Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court.  *See* Scott v. State, Case No. 1D06-4962, online docket.  Petitioner filed a pro se initial brief.  *Id.*  On May 22, 2008, the First DCA affirmed the judgment per curiam without written opinion (Ex. L).  Scott v. State, 982 So. 2d 1181 (Fla. 1st DCA 2008) (Table).  The mandate issued June 17, 2008 (*id.*).  Petitioner did not seek further review.

While the direct appeal was pending, Petitioner filed, through counsel, a motion to correct sentencing error, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (Ex. I).  The state circuit count granted the motion on June 22, 2007, and set a re-sentencing hearing for July

30, 2007 (Ex. J).  Petitioner was re-sentenced to fifteen (15) years of imprisonment, with pre-sentence credit of 607 days (Ex. K).

On May 18, 2009, Petitioner filed a motion seeking an additional fourteen (14) days of pre-sentence credit, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (Ex. M).  The state circuit court denied the motion in an order rendered May 28, 2009 (Ex. N).

On November 17, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. O).  On February 16, 2010, the state circuit court struck the motion as facially insufficient, with leave to file an amended motion within sixty (60) days (Ex. P).  On April 2, 2010, Petitioner filed an amended Rule 3.850 motion (Ex. Q).  The state circuit court summarily denied the motion on May 18, 2010 (Ex. R).  Petitioner appealed the decision to the First DCA, Case No. 1D10-3300 (Exs. S, T).  The First DCA affirmed per curiam without written opinion, with the mandate issuing November 24, 2010 (Ex. U).  Scott v. State, 48 So. 3d 58 (Fla. 1st DCA 2010) (Table).

On June 15, 2010, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D10-3286, alleging ineffective assistance of appellate counsel (Ex. W).  The First DCA denied the petition on the merits on July 12, 2010, and denied Petitioner's motion for rehearing on August 24, 2010 (Ex. X).

Petitioner filed his federal habeas petition on February 3, 2011 (doc. 1 at 27).  He asserts the following grounds for relief:

Ground One:  (A):  Ineffective assistance of trial counsel:  (1) counsel failed to investigate whether the audio tape of Petitioner's interview with police, which the State introduced at trial, was substantively different than the original tape; (2) counsel failed to retain an expert to determine if either of the knives collected from the scene was capable of making the wounds to the victim.

(B): Counsel failed to present mitigating circumstances at sentencing: (1) counsel failed to properly bring to the court's attention various mitigating circumstances; (2) counsel failed to argue for a sentence at the lowest end of the sentencing guidelines.

(C):  Ineffective assistance of appellate counsel:  appellate counsel failed to secure a complete record on appeal; specifically, counsel failed to obtain the original audio tape of Petitioner's interview with police.

(*see* doc. 13 at 7–17).

II      ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent contends the appropriate statutory trigger for the federal limitations period is § 2244(d)(1)(A), the date on which the judgment of conviction became final by the conclusion of direct appeal (doc. 26 at 4).  The appellate court affirmed Petitioner's judgment and sentence on May 22, 2008, and the judgment became final ninety (90) days later, on August 21, 2008 (*id.*).[2]  *See* Chavers v. Secretary, Florida Dept. of Corrections, 468 F.3d 1273, 1274–75 (11th Cir. 2006) (judgment of conviction becomes "final" on the date in which the United States Supreme Court either issues a decision on the merits of the petitioner's direct appeal or denies certiorari, or after the expiration of the 90-day period in which the petitioner could have filed a petition for a writ of certiorari, which begins to run on the date of the appellate court's affirmance of the conviction, not

---

[2] Pursuant to Rule 6 of the Federal Rules of Civil Procedure, the day of the event that triggers the time period is excluded from the calculation, and the last day of the period is included, so the 90–day period expired on August 21, 2008.

the date of the appellate court's mandate) (citing <u>Bond v. Moore</u>, 309 F.3d 770, 774 (11th Cir. 2002) (judgment became "final" ninety days after state supreme court denied defendant's motion for rehearing)).

Liberally construing Petitioner's allegations, he appears to argue § 2244(d)(1)(D) is the appropriate statutory trigger for the limitations period (*see* doc. 29 at 1–4).  He asserts he did not obtain the original audio tape of his interview with police until September 30, 2009 (*id.*).  He states until he listened to the original tape, he was unable to factually support his claim that trial counsel was ineffective for failing to investigate the authenticity of the audio tape published to the jury at trial ("trial tape"), or his claim that appellate counsel was ineffective for failing to obtain the original tape.  Petitioner states the trial tape was altered in the following respects:  (1) the original tape reflects many interruptions and stoppages of the interview; but the trial tape did not appear to have interruptions or stoppages; (2) the original tape included Petitioner's statement that he was "ready to leave"; but the trial tape did not; and (3) the original tape included <u>Miranda</u>[3] warnings given to him at the beginning of the interview, which failed to advise him that he had a right to speak with an attorney <u>before</u> questioning; but the trial tape reflected Investigator Orr advised Petitioner he had the right to speak with a lawyer before questioning (*see* doc. 13 at 9–12, 16–17, 23, 25; doc. 28 at 2–3; doc. 29 at 1–4).  Petitioner contends upon listening to the original tape, he discovered that trial counsel could have challenged the admissibility of the tape on authenticity grounds, and on the ground that Petitioner was not properly advised of his <u>Miranda</u> rights.  Additionally, appellate counsel could have challenged the trial court's denial of his motion to suppress, on the ground that Petitioner was not properly advised of his right to speak with an attorney before questioning.

The undersigned concludes Petitioner failed to show that the factual predicate of each these claims could not have been discovered through the exercise of due diligence prior to the date his conviction became final, on August 21, 2008.  Petitioner was aware prior to trial that the tape the State intended to publish to the jury was an altered version of the original.  During the hearing on the defense's motion to suppress, which occurred ten (10) days prior to trial and which Petitioner personally attended, the parties agreed that certain portions of the interview would be redacted at

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

trial (*see* Ex. B). The redactions are evident when the transcript of the interview (submitted as an exhibit at the suppression hearing but not at trial) is compared to the transcription of the tape published to the jury (*compare* Ex. C at 1 *with* Ex. E at 149; *compare* Ex. C at 16–17 *with* Ex. E at 167, *compare* Ex. C at 33–48 *with* Ex. E at 187). Petitioner was thus aware that the trial tape was an altered version of the original. At the conclusion of the suppression hearing, defense counsel informed the court, "[T]he State's going to have the actual tape available for us. Mr. Scott wants to hear that." (Ex. B at 37–38). Petitioner could have discovered each variation in the original tape and the trial tape by exercising diligence in comparing the two. Additionally, with regard to any discrepancy in the Miranda advisory reflected in the trial tape and the advisory he actually received during the interview, Petitioner had personal knowledge of the advisory given during the actual interview, because he was present at the interview. Further, the record contains a written advisory and waiver signed by Petitioner the day he was interviewed (Ex. D). Therefore, prior to trial, Petitioner was aware, or could have been aware with due diligence, of the rights advisory he actually received at the interview and, upon the tape being played at trial, he was aware of any differences between the two.

Moreover, it is important to note that § 2244(d)(1)(D) expressly contemplates the discovery of the "factual predicate" of each habeas claim, not possession of evidentiary support for those claims. As previously discussed, the factual predicate of each of Petitioner's claims concerning the audio tape could have been discovered with due diligence prior to the date his conviction became final, even though the evidentiary support for those claims may not have been available then. Therefore, Petitioner failed to demonstrate that § 2244(d)(1)(D) is the appropriate statutory trigger for the limitations period. The undersigned thus concludes that the appropriate trigger for the federal limitations period is the date Petitioner's conviction became final, pursuant to § 2244(d)(1)(A).

As previously discussed, Petitioner's conviction became final on August 21, 2008. The statute of limitations began to run on August 22, 2008, the day after the 90-day period expired. *See* Wainwright v. Sec'y, Dep't of Corr., 537 F.3d 1282, 1283–84 (11th Cir.2007) (citing Fed. R. Civ. P. 6(a)); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA). Petitioner had one year from that date, or until August 22, 2009, to file his § 2254 petition. *See* Downs v. McNeil, 520 F.3d 1311, 1318

(11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).  Petitioner did not file his federal petition on or before that date; therefore, it is untimely unless tolling principles apply and render it timely.

        Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).  In this case, on May 18, 2009, after **269 days** of the federal limitations period elapsed, Petitioner filed a motion to correct sentencing error, pursuant to Rule 3.800(b)(2). Respondent concedes this was a tolling motion (doc. 26 at 4).  The motion was pending until June 28, 2009, upon expiration of Petitioner's time to appeal the state circuit court's decision denying the motion.  The federal limitations period then ran **96 days** until it expired on October 2, 2009 (**269 + 96 = 365**).

        Petitioner argues he is entitled to equitable tolling of the limitations period (doc. 13 at 21–27; doc. 29 at 1–5).  A petitioner is entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, — U.S. —, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010) (citing Pace v. DiGuglielmo, 544 U.S. 408, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)) (internal quotations omitted); *see also* Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (citation omitted).  Because equitable tolling is "an extraordinary remedy," it "is limited to rare and exceptional circumstances" and "typically applied sparingly." Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005).  Thus, the Eleventh Circuit has concluded that equitable tolling is available only "'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Id.* (quoting Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)).  "As for the 'extraordinary circumstance' prong, like the Supreme Court's articulation in Holland, [the Eleventh Circuit] too ha[s] required a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the [federal habeas] petition." *See* San Martin v. McNeil, 633 F.3d 1257, 1267 (11th Cir. 2011) (citing

Lawrence, 421 F.3d at 1226–27).  "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'"  Holland, 130 S. Ct. at 2565 (internal quotation marks and citation omitted).  "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner."  San Martin, at 1268 (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002)).  "Mere conclusory allegations are insufficient to raise the issue of equitable tolling."  Id. (citations omitted).

Petitioner identifies two "extraordinary circumstances" which he argues entitle him to equitable tolling of the limitations period (doc. 13 at 21–27; doc. 28 at 1–4; doc. 29 at 1–5).  First, he contends he suffers from a "mental disorder that has had a great effect on his understanding of the procedures of this court" and the AEDPA's federal limitations period (doc. 13 at 21, 25).  Mental impairment is not per se a reason to toll the statute of limitations.  See Hunter, 587 F.3d at 1309–10.  Rather, the alleged mental impairment must have affected the petitioner's ability to file a timely habeas petition.  Id.; see also Lawrence, 421 F.3d at 1226–27.  In other words, the petitioner must demonstrate a causal connection between his delay and his intellectual disability.  Hunter, supra; Lawrence, supra.

In the instant case, unlike in Hunter, the record contains no evidence probative of Petitioner's alleged mental disorder.  Further, Petitioner failed to demonstrate a causal connection between any alleged disorder and the untimely filing of his federal petition.  His conclusory assertion that he is unable to understand and appreciate federal law and procedure due to an unspecified "mental disorder" is wholly insufficient to demonstrate entitlement to equitable tolling. Therefore, he is not entitled to equitable tolling due to an alleged mental disorder.  See Lawrence, 421 F.3d at 1226–27 (petitioner's claim that he had suffered from mental impairments his entire life, without more, is insufficient to justify equitable tolling); see also, e.g., Fox v. McNeil, 373 Fed. Appx. 32, 34, 2010 WL 1407234, at *2 (11th Cir. 2010) (unpublished) (petitioner's alleged mental incompetence did not warrant equitable tolling of AEDPA's one-year limitations period for filing a petition for writ of habeas corpus; petitioner was able to file several pro se motions in state court for post-conviction

relief, he ultimately filed a habeas petition, and he failed to establish a causal link between his claimed mental incompetence and the untimely filing of the petition).[4]

       The second "extraordinary circumstance" identified by Petitioner is the fact that he did not obtain  actual possession of the original audio tape of his interview with police until September 30, 2009 (doc. 13 at 21, 25).  Petitioner states he made the following efforts to obtain the tape, and he submits documentation of these efforts.  On October 19, 2007, he requested <u>depositions and investigative reports</u> from his trial counsel, Mr. Stokes, but Mr. Stokes failed to provide information from Petitioner's file until after Petitioner filed a complaint with the Florida Bar, on July 10, 2008 (*see* doc. 28-1 at 14, 15, 19).  However, in this request, Petitioner made no mention of an audio tape (*id.*).[5]  Petitioner states on July 21, 2008, he asked a relative to contact the state circuit court to request the tape, but with "negative results" (doc. 13 at 21).  He states on October 27, 2008, he again asked a relative to request the tape from the court, but with "negative results" (*id.*).  He states he personally requested the tape from the State Attorney's Office, and was advised by that office on January 27, 2009, that the tape was not in their file (*see* doc. 13 at 21; doc. 28-1 at 16).  The State Attorney's Office suggested Petitioner request the tape from the Escambia County Sheriff's Office or the Criminal Division of the Clerk of Court (*id.*).  On February 9, 2009, Petitioner requested the tape from the Clerk of Court and was advised by that office on February 10, 2009, that the tape was not in the file (*see* doc. 13 at 22; doc. 28-1 at 17).  The Clerk of Court advised Petitioner to contact the agency that took the statement (*id.*).  Petitioner contacted the Escambia County Sheriff's Office and was advised by that office on February 25, 2009, that he would be notified of the cost of compiling and copying the requested information, and on March 12, 2009, Petitioner was advised that the cost of the audio tape was $2.10 (doc. 13 at 22; doc. 28-1 at 18, 23).  On March 19, 2009, Petitioner requested a withdrawal of funds from his inmate account to pay for the tape (doc. 28-1 at 24).  In May of 2009, Petitioner filed a motion to compel/petition for mandamus in the state circuit court, seeking an order requiring the State Attorney's Office to provide him the tape (*id.* at

---

[4] The undersigned cites <u>Fox</u> only as persuasive authority and recognizes that the opinion is not considered binding precedent.  *See* 11th Cir. R. 36-2.

[5] Petitioner subsequently complained to the Florida Bar that Mr. Stokes failed to provide the audio tape, but Mr. Stokes responded that his file did not contain an audio tape (*see* doc. 28-1 at 19, 27).

6–12).  On September 21, 2009, the state court issued an order directing the Sheriff's Office to show cause, within thirty days, why Petitioner was not entitled to a copy of the tape (*id.* at 2–4).  The Sheriff's Office responded that it provided the tape to Petitioner on August 19, 2009, and provided a second tape on September 30, 2009, after Petitioner complained that the first tape was undecipherable (doc. 13 at 22; doc. 28-1 at 29–32).  Petitioner concedes he received the second audio tape on September 30, 2009, but asserts he was delayed in actually listening to it, due to institutional procedures that had to be followed to facilitate his listening to it (doc. 29 at  1–3).  He states he then required time to prepare a Rule 3.850 motion, which he filed on November 17, 2009 (doc. 13 at 22).

Initially, Petitioner's submissions demonstrate he did not make reasonably diligent efforts to obtain the tape until January or 2009, after five (5) months of the federal limitations period had expired.  He did not mention the tape in his letter to Mr. Stokes prior to that, and his asking a relative to contact the court, instead of his doing so directly, does not show reasonable diligence in attempting to obtain the tape.

Further, Petitioner failed to demonstrate a causal connection between his lack of possession of the tape and the late filing of his federal habeas petition.  As previously discussed, the factual predicate for Petitioner's claims concerning the audio tape (that is, that trial counsel was ineffective for failing to challenge the admissibility of the tape on grounds of lack of authenticity and that Petitioner was not properly advised of his Miranda rights; and that appellate counsel was ineffective for failing to challenge the trial court's denial of the motion to suppress on the ground that Petitioner was not properly advised of his Miranda rights) was available to Petitioner before his conviction became final in August of 2008.  At any time thereafter, he could have filed a Rule 3.850 motion asserting these claims and the existence of evidentiary support for these claims, and he could have filed the motion to compel production of the original tape with his Rule 3.850 motion.  This would have tolled the federal limitations period.  Instead, Petitioner filed only the motion to compel, and he waited to do so until May of 2009.  He then waited until November of 2009 to file his Rule 3.850 motion.

Additionally, during the time Petitioner was seeking a copy of the audio tape, he was aware that he had a federal deadline, as evidenced by the fact that he submitted to this federal court, on

March 31, 2009, a "Motion to Toll and/or Enlarge or Extend Procedural Deadline."  *See* <u>Scott v. State</u>, Case No. 3:09cv328/MCR/EMT, Doc. 1-3.  On April 6, 2009, the clerk of court apparently returned the motion to Petitioner unfiled, because Petitioner placed his state court case numbers in the style of the case and had no federal case pending at the time.  *See id.*, Docs. 1-2, 1-3.  The clerk instructed Petitioner to resubmit the document with the appropriate federal case number, or send it to the state court for filing in the appropriate case.  *See id.*, Doc. 1-2.  Nearly four months later, on July 31, 2009, Petitioner re-submitted the motion to this court with a notice to clerk stating he intended to commence a federal habeas action by filing the motion.  *See id.*, Doc. 1-2.  Petitioner also submitted an motion to proceed in forma pauperis, which he had not done when he previously attempted to file the motion.  The clerk of court opened a habeas case and assigned Case No. 3:09cv328/MCR/EMT.  *See id.*, Doc. 1.  On August 7, 2009, upon referral of the case to the undersigned, the undersigned issued an order denying the motion as premature and directing Petitioner to file a habeas petition within thirty days on the court approved-form provided by the clerk.  *See id.*, Doc. 5.  The undersigned expressly admonished Petitioner, "Due to the one-year time limitation, Petitioner should file his petition as quickly as possible."  *Id.*  Petitioner failed to comply with the order and did not submit his petition until November 18, 2009, over two months after the deadline set in the order, and over one month after the one-year federal limitations period expired.  *See id.*, Doc. 16.  Petitioner conceded in the petition that he had not exhausted his state court remedies as to any of his claims and was currently pursuing his claims in state court.  *See id.*  However, he did not request a stay of the federal case.  On November 19, 2009, the undersigned recommended dismissal of the case without prejudice based upon Petitioner's failure to exhaust his state court remedies.  *See id.*, Doc. 17.  Petitioner did not object to the Recommendation, and the district court adopted it on December 3, 2009, and dismissed the case.[6]  *See id.*, Doc. 18.

Petitioner has not explained why he waited four months, until July 31, 2009, to re-submit his "Motion to Toll and/or Enlarge or Extend Procedural Deadline" to this court with instructions that he intended to initiate a federal habeas case.  He has also not explained why he did not comply with

---

[6] It is worth mention that a federal post-conviction application does not qualify for statutory tolling under § 2244(d)(2).  *See* <u>Duncan v. Walker</u>, 533 U.S. 167, 181–82, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001).

this court's order issued August 7, 2009, providing him with the federal petition form and directing him to file a federal petition within thirty days.  Had he done so and accompanied his petition with a motion for stay or abeyance, to allow him to present his unexhausted claims to the state court in the first instance, pursuant to <u>Rhines v. Weber</u>, 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005), his federal petition would have been timely.  Petitioner has failed to demonstrate that his lack of possession of the tape actually prevented him from timely filing his federal habeas petition.  Therefore, he is not entitled to equitable tolling of the limitations period due to this delay.

III.    CONCLUSION

Petitioner filed his § 2254 petition after the one-year federal limitations period expired, even considering the tolling effect of properly filed applications for state post-conviction relief filed prior to expiration of the federal limitations period.  Further, Petitioner failed to carry his burden of demonstrating he is entitled to equitable tolling of the limitations period.  Therefore, the § 2254 petition should be dismissed with prejudice as untimely.

IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

Petitioner's "Motion for Reconsideration of Jurisdiction Notice and Additional Facts" (doc. 28), construed as a motion to consider the arguments included therein and the exhibits attached thereto, is **GRANTED ONLY TO THE EXTENT THAT** the court has considered the arguments and exhibits in determining whether Respondent's motion to dismiss should be granted.

And it is respectfully **RECOMMENDED**:

1.      That Respondent's motion to dismiss (doc. 26) be **GRANTED**.

2.      That the amended petition for writ of habeas corpus (doc. 13) be **DISMISSED** with prejudice as untimely.

3.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 15<u>th</u> day of March 2012.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**